BOUTALL, Judge.
This is a suit by plaintiff to enforce the provisions of a contract entered into between plaintiff and defendants, and to require the defendants to pay certain sums of money alleged to be owed him under the terms of the contract. From an adverse judgment, the defendants have appealed.
The facts leading to the confection of the contract are these. Defendants C. B. Herod and Tom Parker formed a corporation, Control Systems International, Inc., (hereinafter called CSI), for the purpose of fabricating and installing valve systems and controls to be used primarily in the offshore oil industry. Both men were employed within the oil industry, and had acquired certain skills and expertise which led them to believe that they could begin this particular type of business through their joint efforts because of a developing market for this type of service. However, they lacked capital, and sought financial aid in order to make the corporation a going concern. They were unsuccessful in arranging the type of financing they required and were referred to plaintiff, Nor *571 man Nelson. At that time Nelson ran a franchised valve repair shop for W. K. M., a producer of valves used in oil industry operations. Besides having the necessary capital, Nelson had shop and office facilities which could be utilized by the proposed new business, enabling it to begin operations immediately.
The three men entered into negotiations over the course of several weeks, and finally reached an agreement, which is here under consideration. In general, the agreement provides that Nelson buy one-third of the stock of CSI for a price of $333.34 and that he loan CSI money to a maximum of $15,000 as needed. The loan was to be repayable out of the profits of CSI within three years, and to secure the loan, the other stockholders of CSI, Herod and Parker, owners of one-third each, agreed to assign their stock to Nelson as collateral, returnable when the loan was repaid. Additionally, Nelson agreed to provide CSI, at reasonable cost to CSI, shop and office facilities and Workman’s Compensation and Liability Insurance coverage.
The main issue herein arises out of the provisions of Article V. of the contract which is as follows:
“V.
“The salaries of stockholder employees of CSI will be no greater than $1,000 per month, plus reasonable expenses, until the loan made by Nelson is paid in full. Nelson shall receive remuneration of not less than 50% of the combined salary and expenses of the highest paid CSI employee regardless of whether Nelson is a full-time employee or not.”
It is apparent from the record that the corporation became an immediate success, and that some disputes arose amongst the three stockholders. On June 2, 1971, some five months after the agreement, the loan was repaid, and the control of the corporation, which heretofore had been basically in Nelson, was now assumed by the other two stockholders. They informed Nelson that they considered that their obligation to pay him one half of the highest salary as set out in Article V. applied only to the term during which the loan remained unpaid, and, since it was now repaid, he no longer was entitled to -receive these payments. Thus the precise point at issue becomes a determination of the expiration of the term of this obligation.
The defendants contend that the document is clear on its face that these monthly payments to Nelson were to continue only as long as the loan remained unpaid, that this was intended as a security device, and to grant Nelson additional money as an added attraction to cause him to make the basic loan to the corporation. On the other hand, Nelson contends that the document on its face does not restrict his remuneration to the term of the loan, that the agreement is more than simply a loan agreement with attendant security devices, that he is entitled to be paid this remuneration as long as he owns one-third of the stock, and that this represents his one-third interest in the Corporation. The trial court held that the contract was clear on its face and required no evidence to explain the intent of the parties, and found Nelson entitled to receive this remuneration in a stipulated amount for past payments overdue, and in continuing future monthly payments.
The contractual provision plaintiff relies on may have one or many “plain meanings” dependent upon how much of the contract is considered. If we consider only the one sentence that Nelson, shall receive remuneration then the plain meaning is that there is no restriction upon the term of payment or even upon the condition of ownership of stock or employment. If we consider that sentence in relation to the other sentence in Article V, then the plain meaning is that Nelson has to be a stockholder and the term is repayment of the *572 loan. Accordingly, we must resort to a consideration of the entire agreement to determine what limitation is applicable.[1]
The law governing the interpretation of agreements in Louisiana is generally covered in Louisiana Civil Code Articles *573 1945-1962. Utilizing the rules therein provided, our examination of the document, discloses that it is more than a simple agreement of the loan of money and consideration given in repayment thereof. We are not able to make a specific classification of the type of agreement before us, that is, partnership, joint venture, etc., but we are concerned for the sake of this inquiry only with the interpretation of Article V. If we assume that the questioned provision is without limitation, then it would appear to be a perpetual obligation under the terms of Article X. It is incomprehensible that a corporation should have a unilateral eternal obligation to pay half of the highest corporate salary and expenses to a person who may no longer be a stockholder or employee, and thus . a stranger to-the corporation, and thereafter to his heirs or assigns. Similarly, it cannot be an eternal employment contract with salary payable without end. It cannot constitute a unique class of corporate stock in which the dividends somehow are debts, payable (as employee salaries and expenses are) without restriction as to source of payment. See for example LRS 12:63, subd. A. It cannot be a partnership (disregarding obvious question such as of what the partnership consists and how does one partner have all the rights and no obligations) since a partnership without a term is terminable at will. Louisiana Civil Code Article 2884.
We find it controlling that the immediately prior context of the provision relates to the period the loan is outstanding. Similarly the two prior articles relate to the period the loan is outstanding providing that upon payment of the loan the assignment of the stock to Nelson as collateral terminates and Nelson shall, return the stock, but still retains one third of the stock and interest in the corporation.
We thus conclude that, after payment of the loan, Nelson retained no other rights than those arising from his “one third stock and interest”, and that the remuneration provided in Article V ceased upon repayment of the loan. Accordingly, we are of the opinion that the trial judge erred in awarding Nelson remuneration beyond that point and we set aside and reverse that portion of the judgment.
The other issue before us is the award of some Twelve Hundred Fifty-four and 44/100 Dollars ($1,254.44) to Nelson for providing the physical plant and insurance to the corporation, as well as certain work done for the corporation beyond the agreement referred to. The major defense to this issue is that whatever money is owed is due to a corporation named “Ves-co”, and not to Nelson personally. The record is plain that Nelson is the sole owner of Vesco and was authorized to act for it. In fact, in the dealings between these parties Nelson and Vesco were treated as one and the same. There is evidence in the record to indicate that the defendants agreed to honor all debts to Vesco and intended to make payments to Nelson. At that time the only issue was the amount of the obligations. Under these circumstances the trial judge was correct in making the award of $1,254.44 to Nelson.
For the reasons assigned it is ordered that that portion of the judgment rendered in favor of Norman Nelson against Control Systems International, Inc. declaring plaintiff to be entitled to 50% of the salary and expenses of the highest paid employee is now reversed; that portion of the judgment in favor of Norman Nelson awarding him $21,201.44 is now amended and reduced to the sum of $1,254.44, and as thus amended is affirmed. The costs of this appeal shall be borne equally by the parties.
Reversed in part, amended in part, affirmed in part.

. The agreement is as follows:
“AGREEMENT
“THIS AGREEMENT made and entered into this 19 day of January, 1971 by and between Control Systems International, Inc., a corporation organized under the laws of the State of Louisiana and having its principal place of business in New Orleans, Orleans Parish, Louisiana hereinafter referred to as CSI and Norman A. Nelson, a resident of Houston, Harris County, Texas hereinafter referred to as NELSON,
“WITNESSETH
■ WHEREAS CSI, which was formed by C. B. Herod and T. L. Parker for the purpose of manufacturing and selling control systems and components, is in need of financial aid to permit operation of the company for its intended purposes; and
WHEREAS, NELSON is willing to provide financial aid to CSI up to an amount of $15,000 ;
NOW THEREFORE, for and in consideration of the sum of $333.34 paid by NELSON to CSI, the receipt of which is hereby acknowledged and by the mutual covenants and agreements hereinafter set forth, the parties hereto have agreed as follows:
I.
CSI agrees to give NELSON one-tliird of the stock of CSI which shall represent a one-third interest in CSI including a one-third interest in all accounts receivable.
II.
NELSON agrees to loan CSI monies with a total outlay of $15,000, payable with $5,000 down and the remainder in $2,500 amounts, as needed, until a total of $15,000 has been provided. It is understood however that in the event the total amount is not needed, it will not be necessary to provide additional funds at a later date.
III.
To secure the loan made by NELSON to CSI, the stockholders of CSI agree to assign their CSI tock to NELSON as collateral.
IV.
All profit generated by CSI will be applied to retire the secured loan made by NELSON to CSI. When the said loan has been paid off, the stock assigned to NELSON as collateral by the stockholders of CSI shall be returned to these owners. After the stock has been returned to the original owners NELSON shall still retain one-third of the stock and interest in CSI and the other stockholders shall retain the remaining two-thirds.
V.
The salaries of stockholder employees of CSI will be no greater than $1,000 per month, plus reasonable expenses, until the loan made by NELSON is paid in full. NELSON shall receive remuneration of not less than 50% of the combined salary and expenses of the highest paid CSI employee regardless of whether NELSON is a full-time employee or not.
VI.
NELSON agrees to provide CSI, at a reasonable cost to CSI, shop and office facilities and workman’s compensation and liability insurance coverage.
VIII.
In the' event any of the parties hereto decide to sell any of his stock in CSI the remaining stockholders, individually, or through CSI, shall have the right to purchase said stock at a price not to exceed 10% above book value or ten times CSI’s net earnings for the past 12 months, whichever is greater. It is also agreed that payment for said stock can be made with one-third down, one-third after one year, and the remaining one-third after the second year. The interest charge on the unpaid portion shall be 7% per annum.
VIII.
The parties hereto agree not to participate in any activity contrary to CSI’s interest both while as a stockholder and for one year after terminating association with CSI provided termination is voluntary.
IX.
CSI shall have three years to retire the debt incurred with NELSON beginning the date of this agreement and will pay an interest charge of 7% per annum on all amounts due.
X.
This agreement shall inure to the benefit of and be binding upon the parties hereto, the heirs, personnel representatives and assigns of NELSON, T. L. Parker and C. B. Herod, and the successors and assigns of CSI and its stockholders.
Executed in quadruplicate copies, each of which shall be an original copy, on the day and year first above written to evidence which witness our hands and the seal of said corporation.
SIGNED: T. L. PARKER, INDIVIDUALLY C. B. HEROD, INDIVIDUALLY CONTROL SYSTEMS INTERNATIONAL, INC. BY Tom Parker President
Norman A. Nelson”